## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DEREK REDDICK,

     Petitioner,

v.                                 Case No.  4:18-cv-182-RH/MJF

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Derek Reddick ("Reddick"), proceeding *pro se*, commenced this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. Reddick subsequently filed a second amended petition. (Doc. 7). The government filed a response. (Doc. 13). The undersigned ordered Reddick to file a reply. (Doc. 16). As of the date of this report and recommendation, Reddick has not replied despite the undersigned ordering him to do so. (Doc. 16). The undersigned recommends that Reddick's petition be denied.[1]

---

[1] The case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background

On May 24, 2014, Reddick was arrested by Florida authorities and charged with a number of state crimes, including human trafficking; commercial sex trafficking; procuring a person under the age of 18 for prostitution; sexual performance by a child; and deriving support from the proceeds of prostitution. (Doc. 13-2 at 1, ¶ 3).[2] The charges were filed in Leon County Circuit Court Case No. 2014-CF-1550. (*Id.*).

On August 5, 2014, a federal grand jury indicted Reddick for: (1) sex trafficking of a child, in violation of 18 U.S.C. § 1591(a)(1); and (2) interstate transportation of a minor for purposes of prostitution, in violation of 18 U.S.C. § 2423(a). *United States v. Reddick, et al.*, No. 4:14-cr-48-MW (N.D. Fla. Aug. 5, 2014) (ECF No. 1). On August 15, 2014, the United States Marshals Service acquired physical custody of Reddick pursuant to a writ of habeas corpus ad prosequendum issued by Magistrate Judge Charles A. Stampelos. (ECF No. 11).

On July 7, 2016, Reddick pleaded guilty to three charges pending in the second superseding indictment: (1) conspiracy to commit interstate transportation of a minor for purposes of prostitution, in violation of 18 U.S.C. § 2423(a) & (e); and

---

[2] Documents filed in the instant action will be referred to as "Doc. ___," while documents filed in Reddick's federal criminal prosecution in *United States v. Reddick, et al.*, No. 4:14-cr-48-MW (N.D. Fla. Aug. 5, 2014), will be cited as "ECF No. ___."

(2) two counts of sex trafficking of a child, in violation of 18 U.S.C. § 1591(a)(1) & (b)(2). (ECF Nos. 245-247).

On November 14, 2016, Chief District Judge Mark E. Walker sentenced Reddick to a term of imprisonment of "**235 months as to Counts 2, 4 and 6, all counts concurrent. Pursuant to § 5G1.3(c), this sentence shall run concurrently to the anticipated sentence imposed in State Case 14CF1550**." (ECF No. 273 at 3) (emphasis in original). Judge Walker also recommended incarceration at Federal Correctional Institution, Coleman, which is located in Sumter County, Florida.  (*Id.*)

On November 16, 2016, because the federal criminal prosecution of Reddick was completed, the Marshals Service returned physical custody of Reddick to the State of Florida. (Doc. 13-2 at 1, ¶ 6).

On January 11, 2017, Reddick was sentenced in Leon County Circuit Court Case No. 2014-CF-1550, to a 235-month term of imprisonment, to run concurrent and co-terminus to his federal sentence. (Doc. 13-2 at 1-2, ¶ 7, 15, 19). The State retained primary jurisdiction over Reddick and ordered him to be committed to the custody of the Florida Department of Corrections ("FDC"). (*Id.* at 15). The State provided Reddick 964 days "as credit for time incarcerated before imposition" of Reddick's state sentence. (*Id.* at 13-2 at 18).

On September 26, 2017, the Bureau of Prisons ("BOP") computed Reddick's sentence "and began running it concurrent to his state sentence, as ordered by the federal sentencing court." (Doc. 13-2 at 2, ¶ 8). The BOP began running Reddick's sentence from the date it was imposed, November 14, 2016, "and applied 847 days of presentence time credits toward his federal sentence." (*Id*. at 2, ¶ 9).

Although the FDC currently possesses physical custody of Reddick—and has since November 16, 2016—Reddick initiated this section 2241 action against the United States Government. In his second amended petition, Reddick argues that both the federal and state judges who sentenced him intended that he serve his sentences in a federal prison as opposed to a state facility. Reddick therefore seeks a "*nunc pro tunc*" designation and an order transferring him to a federal facility. (Doc. 7. at 2, 5, 10).

## II.    Discussion

### A.    Reddick Failed to Name His Custodian as the Respondent

First, the government correctly noted—and Reddick does not dispute—that Reddick failed to name and serve the proper respondent. (Doc. 13 at 4).[3]

---

[3] On May 15, 2019, the undersigned ordered Reddick to reply to the government's arguments. (Doc. 16). The undersigned warned Reddick: "Failure to reply in opposition to Respondent's arguments will cause this court to presume that Petitioner agrees that this action should be dismissed for the reasons stated by the government." (*Id.* at 1). Reddick never complied with that order.

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over'" the petitioner. *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (citing 28 U.S.C. § 2242 & § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained")). "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Court of Ky.*, 410 U.S. 484, 494-95 (1973). Generally, there is "only one proper respondent to a given prisoner's habeas petition. This custodian, moreover, is 'the person' with the ability to produce the prisoner's body before the habeas court." *Rumsfeld*, 542 U.S. at 434-35; *Braden*, 410 U.S. at 494-95; *Wales v. Whitney*, 114 U.S. 564, 574 (1885). Thus, "the immediate custodian" of a petitioner, "not a supervisory official who exercises legal control" or a federal governmental entity "is the proper respondent." *Rumsfeld*, 542 U.S. at 439; *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 673 (7th Cir. 2003) ("[The] custodian is the person having a day-to-day control over the prisoner.") (quotation marks omitted); *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810-11 (D.C. Cir. 1988) (en banc) (holding that the "proper defendant in federal habeas cases is the warden" of the facility where prisoner is incarcerated).

The failure to name as a respondent and serve the petitioner's custodian deprives a federal court of personal jurisdiction over the custodian. *Johnson v. Reilly*,

349 F.3d 1149, 1153 (9th Cir. 2003); *Stanley v. Cal. Sup. Ct.*, 21 F.3d 359, 360 (9th Cir. 1994); *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party . . . ."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (same). "Service is a jurisdictional requirement," and "a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Inv.*, 553 F.3d 1351, 1360 (11th Cir. 2008).

"When a habeas petitioner incorrectly identifies the party-respondent," therefore, "the habeas petitioner should be permitted leave to amend." *Saunders v. United States Parole Comm'n*, 665 F. App'x 133, 135 (3d Cir. 2016); *Stanley*, 21 F.3d at 360 (holding that the district court should afford the petitioner an opportunity to "amend his petition to name the correct party as respondent"); *Byrd v. Martin*, 754 F.2d 963, 965 (11th Cir. 1985) (holding that "the district court should offer the petitioner the right to amend his petition to name as respondent the appropriate party"). A court need not afford a petitioner leave to amend when such amendment would be futile insofar as the law would still require dismissal of the petition. *Forman v. Davis*, 371 U.S. 178, 181 (1962); *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam); *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003).

As demonstrated below, amendment of Reddick's petition to name the proper party would be futile because Reddick's petition lacks merit regardless of the respondent.

**B.     BOP Made the *Nunc Pro Tunc* Designation that Reddick Requests**

The government asserts—and Reddick does not dispute—that the BOP has already afforded Reddick the core relief that he seeks in his petition, a *nunc pro tunc* designation. (Doc. 13 at 5).

"Federal defendants do not always begin to serve their sentences immediately." *United States v. Wilson*, 503 U.S. 329, 333 (1992). "A federal sentence begins when the defendant is received in federal custody to begin serving his sentence." *United States v. Tubby*, 546 F. App'x 869, 871 (11th Cir. 2013) (citing 18 U.S.C. § 3585(a)); *United States v. Evans*, 159 F.3d 908, 911 (4th Cir. 1998) ("A federal sentence does not commence until the Attorney General receives the defendant into her 'custody' for service of that sentence."); *see* 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody . . . .").

The Attorney General of the United States, through the BOP, has the responsibility for administering federal sentences. *Wilson*, 503 U.S. at 335; *Ponzi*, 258 U.S. at 262 ("The prisons of the United States and the custody of prisoners under sentence are generally under the supervision and regulation of the Attorney

General."). "When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." *Evans*, 159 F.3d at 911-12. The BOP enjoys the "discretion to retroactively designate a state facility as the place for service of a federal sentence." *Tubby*, 546 F. App'x at 871 (citing 18 U.S.C. § 3621(b); *Barden v. Keohane*, 921 F.2d 476, 478-79 (3d Cir. 1990); BOP Program Statement 5160.05(9)(b)(4)). "If a defendant is already serving a state sentence, this '*nunc pro tunc*' designation has the effect of starting the federal sentence while the defendant is in state custody and running the federal and state sentences concurrently." *Tubby*, 546 F. App'x at 871; *see Davis v. Coleman-Medium*, 666 F. App'x 802, 803-04 (11th Cir. 2016).

The judgment entered in Reddick's federal criminal case in the Northern District of Florida directed the following: "**Pursuant to §5G1.3(c), this sentence shall run concurrently to the anticipated sentence imposed in State Case 14CF1550.**" (Doc. 13-2 at 6) (emphasis in original). The record reflects that after Reddick was sentenced in state court in Case No. 2014-CF-1550, the BOP computed Reddick's sentence and began running it concurrent to the state sentence, as Judge Walker ordered. (Doc. 13-2 at 1-2). Specifically, the BOP began Reddick's federal sentence on the date of imposition, November 14, 2016, and applied 847 days of presentence time credits toward his federal sentence. (*Id.* at 2 ¶ 9).

Thus, the BOP has already afforded Petitioner the *nunc pro tunc* designation he seeks in his second amended petition, and he has received, and continues to receive, credit against his federal sentence for time served on his Florida sentence.

## C.   Petitioner Is Not Entitled to Transfer to a Federal Facility

Reddick—who remains in FDC custody—argues that "it was the intentions of both federal and state judges" that he be "designated to a Federal Facility." (Doc. 7 at 5). Accordingly, Reddick argues that he is entitled to a transfer to a federal facility. (*Id.* at 10).

First, it is worth noting that the record does not indicate that the State judge intended that Reddick serve his Florida sentence in a Federal facility. Reddick has the burden of establishing his right to relief and any facts that he asserts in support of this goal. *Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006); *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001). Reddick has not directed this court to anything in the record which establishes the State judge's intention on this subject. Indeed, the State judgment states that "[t]he defendant is committed to the custody of the Department of Corrections." (Doc. 13-2 at 15). The State judgment does not mention anything about the BOP or federal custody. Accordingly, Reddick has not established that the State court intended that he serve his Florida sentence in a federal facility.

As to Judge Walker, there is nothing in the record indicating that Reddick asked Judge Walker to order that he serve any State sentence in a federal prison. In her sentencing memorandum, Reddick's attorney did not request that Reddick serve his state sentence in a federal prison. (ECF No. 255). Reddick himself, in a letter to Judge Walker, also did not request that he serve any State sentence in a federal facility. (ECF No. 255-2). There was no discussion of this issue at Reddick's sentencing hearing. (ECF No. 286). Reddick himself addressed the court and did not request that he serve any State-imposed term of incarceration in a federal facility. ECF No. 286 at 38-40). For her part, Reddick's attorney simply asked that Judge Walker recommend that Reddick be incarcerated close to Boynton Beach, Florida, and that Judge Walker recommend that any State sentence of imprisonment run concurrent with Reddick's federal term of incarceration. (ECF No. 286 at 42, 60-61). Judge Walker agreed to make both recommendations, but he also noted that the State judge was not bound by a federal judge's recommendations. (ECF No. 286 at 42, 60-61).

Particularly because neither party requested, nor raised the possibility, that Reddick serve his State term of incarceration in a federal prison, it is likely that Judge Walker did not even contemplate where Reddick should serve any term of incarceration that Florida might impose. *See United States v. Lynn*, 912 F.3d 212, 218 (4th Cir. 2019) ("When a state sentence is anticipated, the district court will

normally lack definite information about that sentence . . . ."). Thus, in the judgment, Judge Walker included the standard language that Reddick was "committed to the custody of the United States Bureau of Prisons" to serve the incarcerative portion of his sentence. (ECF No. 273 at 3). That standard language does not indicate any preference as to whether Reddick serve his sentence in a federal or state facility.

Because inculcating family ties may assist in the rehabilitation of offenders, consistent with the practice of most federal judges, Judge Walker acceded to Reddick's request that he recommend to the BOP that Reddick serve his sentence close to his family in Boynton Beach, Florida. (ECF No. 286 at 42; Doc. 13-2 at 6). That recommendation does not establish that Judge Walker intended for Reddick to serve a concurrent sentence *in federal custody* as opposed to state custody. That recommendation also does not bind the BOP to incarcerate Reddick in a federal prison, much less a specific federal prison. *See United States v. Kerr*, 472 F.3d 517, 520 (8th Cir. 2006) (noting that "a district court's recommendation is not binding on the BOP"); *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997) (noting that a district court's recommendation as to the location of incarceration is not a requirement to which BOP must adhere). Such recommendations also are not part of the sentence imposed by the court. *United States v. Ceballos*, 671 F.3d 852, 855-56 (9th Cir. 2011) (per curiam) (holding that a recommendation to the BOP is "not part of the sentence").

Regardless, when Judge Walker sentenced Reddick, Reddick was in the custody of the Marshals Service only temporarily pursuant to the writ of habeas corpus ad prosequendum issued by Judge Stampelos. (ECF No. 11). When two or more sovereigns prosecute a defendant, the first sovereign to arrest the defendant enjoys primary custody and may insist that the defendant serve his sentence for a conviction of that sovereign before serving any other sentence, although the sovereign with primary custody is entitled to waive its priority. *Ponzi v. Fessenden*, 258 U.S. 254, 260-62 (1922); *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *Thomas v. Brewer*, 923 F.2d 1361, 1366-67 (9th Cir. 1991). The arresting sovereign retains primary custody unless and until it relinquishes its priority in some way. *Cole*, 416 F.3d at 897. The decision to relinquish primary custody of a defendant rests solely with the sovereign exercising priority. *See Ponzi*, 258 U.S. at 260-62.

Because Florida has primary custody of Reddick and did not indicate a relinquishment of its priority, by operation of law, Reddick was in effect "on loan" to the federal government so that the federal government could prosecute him for his federal crimes, not to commence service of any federal sentence. *See Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir. 1980) ("[I]f a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody

at the completion of the federal proceedings . . . A writ of habeas corpus ad prosequendum is only a 'loan' of the prisoner to another jurisdiction for criminal proceedings[.]"); *see Butler v. Warden, FCC Coleman-Medium*, 451 F. App'x 811, 812 (11th Cir. 2011) ("When the federal government takes possession of a state prisoner pursuant to a writ of habeas corpus *ad prosequendum*, the state's custody is not interrupted, and thus the prisoner's federal sentence does not begin to run until he is turned over to federal authorities after having served his state sentence."). As the Fourth Circuit observed:

> A federal sentence does not begin to run . . . when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum*. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.

*Evans*, 159 F.3d at 912; *Thomas*, 923 F.2d at 1366-67 (holding that the act of producing a state prisoner pursuant to a federal writ of habeas corpus ad prosequendum does not constitute the relinquishment of state custody).

Under the doctrine of primary custody, an inmate's federal sentence may only commence after the federal government exercises primary jurisdiction over him. *Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018); *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013); *Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006). Because Reddick was in federal custody only temporarily for purposes of his prosecution, after Judge Walker imposed sentence on Reddick, the Marshals Service

properly returned Reddick to State custody for State prosecution and service of any sentence that Florida might impose. *See Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978). Reddick did not begin serving his federal sentence while he was temporarily in Federal custody, and he would not begin serving that sentence until the federal government acquired primary custody of him or the BOP retroactively designated a state facility as the place for service of Reddick's federal sentence pursuant to 18 U.S.C. § 3621(b)).

Finally, even if Judge Walker had formed an opinion as to whether Reddick should serve his Florida sentence in a federal facility, and even if Judge Walker had clearly articulated this preference in Reddick's judgment, and even if Reddick's federal sentence had begun to run while he was temporarily in federal custody, Congress has not authorized federal courts to decide where a defendant will be incarcerated. 18 U.S.C. § 3621(b); *see United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995); *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993). Rather, Congress has authorized the executive branch—specifically the Bureau of Prisons— to make such decisions. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . .").

Indeed, Congress has authorized the BOP to incarcerate defendants in state prisons. *See id.*; *Sester v. United States*, 566 U.S. 231, 235 (2012) ("The Bureau may therefore order that a prisoner serve his federal sentence in a *state* prison."); *Pickett*

*v. Warden McKean FCI*, 726 F. App'x 104, 106 (3d Cir. 2018) ("The BOP may designate a state prison as the place of confinement and it has wide authority in making such a designation."). Reddick's request to serve his Florida sentence in a federal facility, therefore, should be addressed to the BOP and FDC, not the federal courts.

Absent demonstration that the BOP violated the Constitution or a federal law in selecting a defendant's place of incarceration, federal courts are powerless to second-guess that decision. Reddick has not demonstrated any such violation, and he has not shown that federal law authorizes a federal court to order the BOP to transfer him to a BOP facility to serve his sentence. Accordingly, the District Court cannot grant Reddick's request that he serve his term of incarceration in a federal facility, and his petition should be denied.

### III.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     Reddick's second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (Doc. 7) be **DENIED**.

2.     The clerk of the court be directed to close this case file.

At Panama City, Florida, this <u>28th</u> day of September, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**